UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARVIN JOHNSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-6481** |
| **LYNN COOPER, WARDEN** | **SECTION "F" (6)** |

### REPORT AND RECOMMENDATION

  This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

  Upon review of the entire record, the Magistrate Judge has determined that this matter can be disposed of without an evidentiary hearing. For the reasons which follow, the Magistrate Judge issues this Report and Recommendation in accordance with the applicable law, hereby recommending that the instant application for federal *habeas corpus* relief be

**DENIED WITH PREJUDICE.**

## **PROCEDURAL HISTORY**

Petitioner, Marvin Johnson, is a state court prisoner currently incarcerated at the Avoyelles Correctional Center in Cottonport, Louisiana.[1] On January 29, 2002, the Jefferson Parish District Attorney's Office filed a Bill of Information charging the petitioner with one count of distribution of cocaine, in violation of La. R.S. 40:967(A)(count one), and one count of distribution of cocaine within 1000 feet of a religious building property, in violation of La. R.S. 40:981.3 (count two).[2] On January 30, 2002, the petitioner was arraigned and pled not guilty.[3] On May 6, 2002, the State dismissed count one, the distribution charge, of the bill of information. Petitioner's trial on count two began on May 8, 2002.[4] After a two-day trial, the twelve-member jury returned a verdict of guilty as charged.[5] On May 23, 2002, the petitioner filed a Motion in Arrest of Judgment or, in the alternative, Motion for New Trial,[6] which was denied by the trial judge.[7] Subsequently, the trial judge sentenced the petitioner

---

[1]*See* Petitioner's Habeas Corpus Petition, § 2254.

[2]*See* State Rec. Vol. 1 of 2, p. 12-13. On May 6, 2002, the State dismissed Count One of the *Bill of Information*, the distribution of cocaine charge.

[3]*See* State Rec. Vol. 1 of 2, p. 1.

[4]*See* State Rec. Vol. 1 of 2, p. 6-7.

[5]*See* State Rec. Vol. 1 of 2, p. 9.

[6]*See* State Rec. Vol. 1 of 2, p. 41.

[7]*See* State Rec. Vol. 1 of 2, p. 44.

to 15 years at hard labor, specifically denying the petitioner the benefit of parole, probation, or suspension of sentence for two years, as required by the sentencing statute.[8]

Petitioner filed a Motion for Reconsideration of Sentence, which was denied by the trial judge.[9] On March 23, 2002, the State filed a Multiple Offender Bill of Information pursuant to La. R.S. 15:529.1, alleging that the petitioner was a fourth felony offender.[10] A hearing on the Multiple Offender Bill of Information was held on July 25, 2002.[11] After hearing testimony, the trial judge found that the State had presented sufficient evidence to prove that the petitioner was a fourth felony offender.[12] The trial judge then sentenced petitioner to imprisonment at hard labor for 20 years without probation or suspension of sentence.[13] On July 26, 2002, the petitioner filed a Motion to Reconsider Sentence, which was denied by the trial judge.[14]

On August 15, 2003, the petitioner, through appellate counsel, filed an appellate brief

---

[8]*See* State Rec. Vol. 1 of 2, p. 44.

[9]*See* State Rec. Vol. 1 of 2, p. 45.

[10]*See* State Rec. Vol. 1 of 2, p. 37-38.

[11]*See* State Rec. Vol. 1 of 2, p. 46-48.

[12]*See* State Rec. Vol. 1 of 2, p. 48.

[13]*See* State Rec. Vol. 1 of 2, p. 48.

[14]*See* State Rec. Vol. 1 of 2, p. 49-50.

in the Louisiana Fifth Circuit Court of Appeal (No. 03-KA-903).[15]  The State subsequently filed its responsive brief on September 12, 2003.[16]  On December 9, 2003, the court of appeal affirmed the petitioner's conviction and sentence.[17]  The petitioner did not seek further review on appeal by filing a writ application with the Louisiana Supreme Court, nor did he seek rehearing with the court of appeal.[18]  Therefore, because the petitioner failed to file a writ application with the Louisiana Supreme Court or to seek a rehearing with the court of appeal, pursuant to state law his conviction became final after the 14 day delay for filing for rehearing in the court of appeal had expired, or on December 23, 2003. [19]

The petitioner filed his first "Uniform Application for Post-Conviction Relief" on

---

[15] *See* State Rec. Vol 2 of 2.

[16] *See* State Rec. Vol 2 of 2.

[17] *State v. Johnson*, 864 So.2d 645, 03-903 (La. App. 5 Cir. 12/9/03).

[18] *See* State Rec. Vol. 2 of 2, p. 13 of court of appeal opinion which states: "REHEARING NOT APPLIED FOR" and "WRITS NOT APPLIED FOR."

[19] *See* La.C.Cr.P. art. 922, in pertinent part, as follows:
**Art. 922.  Finality of judgement on appeal.**
    A.  Within fourteen days of rendition of the judgment of the supreme court or any appellate court, in term time or out, a party may apply to the appropriate court for a rehearing.  The court may act upon the application at any time.
    *B.  A judgment rendered by the supreme court or other appellate court becomes final when the delay for applying for a rehearing has expired and no application therefor has been made*.
    C.  If an application for a rehearing has been made timely, a judgment of the appellate court becomes final when the application is denied.

February 25, 2004.[20] The trial judge denied relief on March 15, 2004.[21] On April 1, 2004, the petitioner filed a "Notice of Intention to Apply to the Fifth Circuit of Appeals of the State of Louisiana for Writ of Review" in the 24th J.D.C.[22] On April 6, 2004, the trial court granted this motion, giving the petitioner until May 6, 2004, in which to file his writ application in the court of appeal.[23] On May 3, 2004, the petitioner filed a writ application with the Louisiana Fifth Circuit Court of Appeal (Writ No. 04-KH-495).[24] On May 5, 2004, that court denied relief, noting that it found no error in the trial court's ruling of March 15, 2004.[25] On or around May 20, 2004, the petitioner filed a writ application with the Louisiana Supreme Court seeking review of the court of appeal's ruling (Writ No. 04-KH-1414).[26] On April 22,

---

[20]*See* State Rec. Vol. 2. Petitioner's post-conviction application was stamped as filed on March 8, 2004. However, in light of *Causey v. Cain*, 451 F.3d 601 (5th Cir. 2006), and the mailbox rule, petitioner's application is considered filed on the date it was signed, on February 25, 2004.

[21]*See* State Rec. Vol. 2 of 2.

[22]*See* State Rec. Vol. 2 of 2.

[23]*See* State Rec. Vol. 2 of 2.

[24]*See* State Rec. Vol. 2 of 2.

[25]*See* State Rec. Vol. 2 of 2; *State v. Johnson*, 04-495 (La. App. 5 Cir. 5/5/04) (unpublished order).

[26]*See* State Rec. Vol. 2 of 2. The exact date that petitioner filed his writ application is unclear. There are two copies of the writ application in the state court record. The copy that appears to be the official copy is signed, but not dated. The other copy is signed and dated June 11, 2004. Based on a letter from John T. Olivier, Clerk of Louisiana Supreme Court, to Mr. Marvin Johnson, giving the date of filing of Writ No. 04-KH-1414 as June 8, 2004, the Court assumes the copy dated June 11, 2004 is not an accurate indication of when petitioner's writ application was actually filed. In light of *Causey v. Cain*, 451 F.3d 601, the Court will not use the date that the writ application was

2005, the Louisiana Supreme Court denied petitioner's writ application.[27]

The petitioner filed his second Uniform Application for Post-Conviction Relief in the 24th J.D.C. on June 1, 2005.[28] On June 16, 2005, the trial court denied the application on state procedural grounds, noting that the application was repetitive under La.C.Cr.P. art. 930.4.[29]

The instant petition for habeas corpus relief was filed in this Court on August 26, 2005.[30]

## STATEMENT OF FACTS

The following summary of events leading to the arrest and conviction of the petitioner is taken from the published court of appeal decision:[31]

> In early October of 2001, the Jefferson Parish Sheriff's Office ("JPSO") received several telephone calls from concerned citizens reporting illegal drug sales in Marrero, Louisiana. In response, the Jefferson Parish Sheriff's Office

---

stamped as filed. Instead, petitioner's filing date is the postmark on the envelope carrying his writ application. The postmark reads May 20, 2004.

[27] *See* State Rec. Vol. 2 of 2. *State ex rel. Johnson v. State*, 899 So.2d 560, 04-1414 (La. 4/22/04).

[28] *See* State Rec. Vol. 2 of 2. The order denying petitioner's Application for Post-Conviction Relief indicates that the petition was filed on June 10, 2005. However, pursuant to *Causey*, 451 F.3d 601, for federal purposes, petitioner's filing date is considered by this court to be June 1, 2005, which is the date he signed and tendered the application to his prison custodian..

[29] *See* State Rec. Vol. 2 of 2.

[30] *See* Petitioner's Habeas Corpus Petition, § 2254. The application is signed and dated on page 10.

[31] *State v. Johnson*, 864 So.2d 645, 648-649 (La. App. 5 Cir. 2003).

6

set up an undercover operation near the intersection of Fourth Street and Meyer Street in Marrero on October 8, 2001.

Jefferson Parish Sheriff's Office Narcotics Agent Kim Blanche asked Robin Jones, a JPSO undercover agent, to participate in the operation. Agent Blanche informed Agent Jones of the target area and provided her with two traceable $20 bills.

At approximately 1:00pm on October 8, 2001, Agent Jones proceeded in her vehicle, which is specially equipped with a hidden video camera and voice transmitter, to the corner of Fourth and Meyer Street. When she drove into the area, she saw a black male wearing sunglasses, a red sweater, and stone-washed blue jeans sitting under a tree.

Agent Jones drove up to the man and asked for two "20's." The suspect leaned into Agent Jones's vehicle and spoke with her about buying "20's," which is street-slang for crack cocaine. After this discussion, he obtained an off-white "rock" from one of several men sitting on a nearby porch. The suspect walked back to the undercover agent's car, broke off a small piece of "rock," took $20.00 from the undercover agent, and then gave her the "rock." The entire transaction was captured on videotape, which was later played at trial.

After completing the transaction, Agent Jones met Agent Blanche at a pre-arranged location and turned the evidence, including the remaining $20 bill, the video tape and the "rock," over to Agent Blanche. When Agent Blanche field-tested the "rock," it was positive for cocaine. Subsequently, Charles Krone, an expert forensic scientist at the Jefferson Parish Crime Lab, analyzed the "rock" and confirmed that the substance was cocaine.

When Agent Blanche and her supervisor, Sergeant Joe Williams, reviewed the videotape of Agent Jones's undercover purchase, Sergeant Williams recognized the seller as the defendant, Marvin Johnson. At Sergeant Williams's instruction, Agent Blanche complied a photographic lineup that contained Johnson's photograph.

On October 11, 2001, Agent Blanche showed the lineup to Agent Jones. Agent Jones identified the photograph of defendant, Marvin Johnson, as a photograph of the man who sold her the "rock" of crack cocaine on October 8, 2001. The defendant was later arrested in a "roundup."

> On April 23, 2002, Sergeant Williams went to the scene of the October 8, 2001 drug purchase, took photographs of the area, and measured the distance between the drug transaction and the church property. When Sergeant Williams measured the distance using a "rolodex," he determined that the distance was 990 feet. After the State presented testimony and evidence at trial, the twelve-person jury found that defendant was guilty as charged.

## STATUTE OF LIMITATIONS & TIMELINESS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), petitioners seeking federal *habeas corpus* relief are subject to a one-year statute of limitations governing the time within which they may file a petition under 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1). The one year period commences from " *the latest of* the date on which the judgment became final by the conclusion of direct review *or* the expiration of the time for seeking such review." §2244 d(1)(A) (emphasis added). When a "properly filed" state post-conviction application is pending, the limitation period is tolled. §2244 (d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.") Thus, a federal court considering a petitioner's § 2254 application must extend petitioner's one-year deadline by the number of days during which his post-conviction proceedings were pending in the state courts. *See, e.g., Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998) (extending petitioner's AEDPA limitations period by the ninety-one days during which his state post-conviction proceeding was pending). Respondent submits that petitioner did not timely file the instant petition. For

the following reasons, however, the court finds that the application is timely filed and hereby rejects respondent's defense.

For purposes of Louisiana law, petitioner's conviction became final on December 23, 2003, after the 14 day delay for filing for rehearing in the court of appeal had expired. La. Code Cr. Proc. art. 922 (D). Under the AEDPA, the federal limitations period began to run on January 8, 2004, after the expiration of the time for seeking direct review of petitioner's conviction. *See* 28 U.S.C. § 2244(d); *See also* Sup. Ct. R. 13. Thereafter, petitioner had three hundred sixty-five (365) days, or until January 8, 2005, to file his federal *habeas corpus* petition under 28 U.S.C. § 2254. Petitioner, however, did not file his federal petition until August 26, 2005. Therefore, unless he had state post-conviction applications pending which would toll the AEDPA's statute of limitations, petitioner's habeas corpus would be time-barred.

Petitioner filed his first application for post-conviction relief on February 25, 2004, allowing 46 days of the one year limitations period to expire. The limitation period was then tolled until the trial judge denied relief on March 15, 2004. On May 3, 2004, petitioner timely filed his writ application in the court of appeal.[32] The period therefore remained tolled until after the court of appeal denied Writ. No. 04-KH-495 on May 5, 2004. Petitioner next filed for supervisory writs to the Louisiana Supreme Court. It is this filing which respondent

---

[32]The trial court had granted petitioner until May 6, 2004 to file his request for review of the lower court's ruling. *See* Order dated April 6, 2004, State Rec. Vol. 2 of 2.

contends was not timely filed as it was not filed within 30 days of the appellate court's decision, as mandated by Louisiana Supreme Court Rule X, § 5(a).[33] For this reason, respondent argues that the limitations period was not tolled during the entire time that the writ application was pending before the Louisiana Supreme Court, causing the limitations period to expire.

However, this court finds that petitioner did timely file his writ application. The court of appeal denied Writ. No. 04-KH-495 on May 5, 2004, thus a writ application to the Louisiana Supreme Court would have been due 30 days later, or on June 4, 2004. While respondent contends that petitioner did not file his application until June 8, 2004, the application was actually postmarked on May 20, 2004.[34] Therefore, under the decision in *Causey v. Cain*, 451 F.3d 601, the statute of limitations was tolled until petitioner's Louisiana Supreme Court writ application was denied on April 22, 2005. The statute of limitations began running again on April 23, 2005, and petitioner allowed 125 more days to expire before he filed the instant habeas petition on August 26, 2005. Thus, petitioner allowed a total of 121 days (46 + 125 = 171 days) to expire before filing his federal habeas petition. Petitioner's § 2254 petition is timely.

---

[33]*See* Fed. Rec. Doc. 7, Response at p.11.

[34]See further details about this filing at footnote 26 herein.

## EXHAUSTION

The AEDPA requires that a petitioner "exhaust the remedies available" in the state courts before a federal court can grant *habeas corpus* relief. *See* 28 U.S.C. § 2254(b)(1)(A). AEDPA's exhaustion requirement is satisfied when "the substance of a federal habeas claim has been fairly presented to the highest state court." *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999). "Such presentment can take place via direct appeal *or* state habeas proceedings." *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (citing *Orman v. Cain*, 228 F.3d 616, 620 (5th Cir. 2000)) (emphasis added). The "fairly presented" requirement is satisfied when petitioner's federal application contains the "substantial equivalent" of the claim presented to the state court. *See Picard v. Connor*, 404 U.S. 270, 275-78 (1971).

Petitioner's federal application for *habeas corpus* relief contains one claim, which he presented to Louisiana Supreme Court in Writ No. 04-KH-1414. Respondent concedes, and the court agrees, that petitioner has exhausted the claims presented in the instant petition.

## STANDARD OF REVIEW

The AEDPA includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.[35]

---

[35] Section 2254(d) provides in full:
An application for a writ of habeas corpus on behalf of a person in custody pursuant

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 413 (2000); *Hill*, 210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state

---

to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, quoting 28 U.S.C.§ 2254(d)(2).

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Petitioner's only claim is that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment. Petitioner was convicted of one count of distribution of cocaine within 1000 feet of a religious building property, in violation of La. R.S. 40:981.3. Specifically, petitioner asserts that his attorney failed to object to the accuracy of the method used by the State to measure the distance from the scene of the narcotics crime to the location of a religious building. Respondent denies that petitioner received ineffective assistance and asserts that counsel's conduct cannot be characterized as performance that fell below an objective standard of reasonableness.

The standard governing claims of ineffective assistance of counsel as established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States'" for the purposes of federal review of *habeas corpus* claims under § 2254. *Williams v. Taylor*, 529 U.S. 362, 391 (2000); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir. 2002). Accordingly, petitioner is entitled to relief if the state court's adjudication of his ineffective assistance of counsel claim was either "contrary to" or involved an "unreasonable application" of *Strickland*'s standard for ineffective assistance of counsel or if the state court's decision was

based on an "unreasonable determination"of the facts in light of the evidence before the court. *See Foster*, 293 F.3d at 777.

In *Strickland*, the Supreme Court held that in order to establish a violation of his Sixth Amendment right to effective assistance of counsel, a petitioner must make two showings. First, he must establish that his counsel's performance was "deficient." *Strickland*, 466 U.S. at 687. The proper standard of attorney performance, and the standard of performance to which petitioner is entitled, is that of "*reasonably* effective assistance." *Id.* (emphasis added). The deficiency showing requires that the attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* It is the petitioner who bears the burden of demonstrating that his counsel's performance fell below an "objective standard" of reasonableness. *Id.* at 688. Furthermore, judicial evaluation of counsel's performance must be highly deferential. *See id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[,]" and due to the difficulties in making this assessment, reviewing courts must indulge a "strong presumption" that counsel's conduct fell with the wide range of performance that constitutes "reasonable professional assistance." *Id.*[36] Part of counsel's duty to provide reasonably effective assistance also includes a duty to perform reasonable

---

[36] Thus, the petitioner must overcome the presumption that his attorney's performance, under the circumstances, may be considered "sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

investigations. *See id.* at 691. Where counsel has made a less than complete investigation of the law and the facts relevant to options plausible to his client, that decision is reasonable "precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."*Id.*

Second, the petitioner must show that his attorney's deficient performance was prejudicial to his defense in order to constitute the ineffective assistance in violation of the Constitution. *See id.* at 692. The "prejudice" showing requires that the errors made by counsel were "so serious as to deprive the defendant of a fair trial ... whose result is reliable." *Id.* at 687. The defendant bears the burden of showing that there was a reasonable probability, that "*but for* counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 (emphasis added).[37] This prejudice inquiry of the *Strickland* analysis asks whether or not counsel's deficient performance "renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).

The petitioner's argument does not satisfy either prong of the *Strickland* test. First, petitioner does not demonstrate any prejudice. Regarding the alleged prejudice that occurred in measuring the distance between the religious building and the narcotics transaction,

---

[37] A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Sergeant Williams testified that he measured the distance using a calibrated rolodex.[38] He testified that he monitored the rolodex as he walked to ensure that it was working properly and measuring the distance accurately.[39] Additionally, Sergeant Williams reviewed the videotape of the drug transaction before going to the scene to make certain that he could accurately locate the site of the transaction.[40] He identified the locations using numerous photographs that he had taken and an aerial photograph of the neighborhood in question.[41] Sergeant Williams marked exhibits indicating to the jury the path that he walked to measure the distance between the drug transaction and the church property.[42] The pedestrian route used by Sergeant Williams included various turns and angles, thus decreasing the chance that the transaction took place within a thousand feet of the religious building. Generally, it is accepted that the shortest distance between two points is a straight line. Since the rolodex measured the pedestrian route to the buy location, instead of a straight route, the petitioner benefitted from this mode of measurement. Thus, petitioner has failed to satisfy the prejudice prong of the *Strickland* test.

---

[38]*See* State Rec. Vol. 1 of 2, p. 159; Transcript of proceedings dated May 9, 2002, at p. 93. (hereinafter T. at p. __).

[39]*See* State Rec. Vol. 1 of 2, p. 160; T. at p. 94.

[40]*See* State Rec. Vol. 1 of 2, p. 162; T. at p. 96.

[41]*See* State Rec. Vol. 1 of 2, pp. 158-72; T. at pp. 92-106.

[42]*See* State Rec. Vol. 1 of 2, p. 166; T. at p. 100.

Second, petitioner has failed to show that his defense counsel was deficient. Trial counsel had no reason to object to the method of measurement. As previously noted, the pedestrian method was most advantageous to the defendant. Thus, it would not have been proper for trial counsel to have argued for the State to use a straight line measurement. Petitioner fails to establish that defense counsel's performance was deficient.

Petitioner's failure to establish *either* prong of the *Strickland* test necessitates a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. Habeas relief in this case is not warranted.

## **RECOMMENDATION**

Based upon the foregoing, it is hereby **RECOMMENDED** that the petition for writ of habeas corpus filed by **MARVIN JOHNSON** be **DENIED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

    New Orleans, Louisiana, this __4th__ day of _____May_____, 2007.

                                                       _____
                                                       LOUIS MOORE, JR.
                                                       United States Magistrate Judge